CASE 66—EQUITY—MARCH 19, 1881.

## Thompson, &c., v. Pettibone.

APPEAL FROM MERCER CIRCUIT COURT.

1. The chancellor has the power to direct the conversion of the property of an infant when her interest requires it, if it can be so done as not to change the nature of the property, nor its descendible quality.

2. In a case authorizing it, the court will order that the conversion be made under proper restrictions.

THOMPSON & THOMPSON FOR APPELLANTS.

The only objection to the judgment is, that the circuit court ordered the bonds to be refunded in bonds of the same state—North Carolina—a repudiating state.

P. B. THOMPSON FOR APPELLEES.

It is greatly to the interest of the infant that the bonds should be re-funded. The bonds now held are non-productive, while, if they are re-funded, all the infant's debts can be paid, and she will have, in addition, a considerable income.

JUDGE HARGIS DELIVERED THE OPINION OF THE COURT.

May Pettibone, an infant, is the owner of eighty-nine bonds, of $1,000 each, of the state of North Carolina. Her ancestor, who devised them to her, was indebted at her death $1,134.58. No other property belonged to her except some jewelry, which was sold for $365, and the proceeds paid to her creditors.

The infant has contracted debts to the amount of $750 for board, clothing, &c., furnished by the executrix of the decedent. It appears that twenty of the bonds are worth eleven cents to the dollar, and they can be funded in other bonds of that state at the rate of fifteen per cent. on the dollar, bearing four per cent. interest. And that nineteen of them are worth nineteen cents to the dollar, and can be funded in other bonds of the state at the rate of twenty-five per cent. to the dollar, bearing four per cent. interest.

As to the remaining fifty bonds, they seem to have been repudiated by the state, and are worth but one and a half cents to the dollar.

The infant has no other property to pay her debts or to support herself with.

Her guardian applied to the chancellor for his sanction and permission to fund the thirty-nine bonds first mentioned, and for advice as to the proper disposition to be made of the fifty bonds apparently so valueless.

The chancellor directed that the thirty-nine should be funded, and the fifty remain without change or disposition. The creditors were made defendants, and all consented to the decree except Thompson & Thompson, who agree to the funding of the bonds, if the court has the power to direct them to be funded, but excepted to the judgment directing them to be funded, on the sole ground that the court has no power to do so.

This is the only error assigned.    Guardians will not ordi-- narily be permitted to change personal property into real property, or the latter into the former.

But guardians may, under particular circumstances, where it is manifestly for the benefit of the infant, change the nature of the estate.

" And the court would support their conduct, if the court would do it under the same circumstances.    They cannot do it wantonly, but where it is manifestly for the convenience of the infant.    The court keeps a strict hand over them to prevent partiality.    But it is too hard to say that the court would not permit trustees or guardians to do it in any case where it is manifestly for the advantage or convenience of the infant."

This was the language of the Lord Chancellor in Inwood v. Twyne, 1 Ambler, 419.

It is substantially said in Pierson v. Shore, 1 'Atkyns, 480, that the act of a guardian, where it is reasonable and beneficial to the infant, will have the same consequence as if done by the infant at full age, but it will be otherwise if the act is wantonly done by the guardian without any real benefit to the infant.

It can hardly be doubted that courts of chancery have always had the power to direct the conversion of the property of an infant where it is for his benefit, if it can be so done as not to change the nature of the property or alter its descendible quality.    (See Ware v. Polhill, 11 Ves., jr.)

Lord Eldon said, in Phillips *ex parte*, 19 Vesey, jr., that the court acts for an infant as a trustee, and works the change of his property for his benefit.

Under our statute, guardians have the power to sell personal estate of the ward, and, with leave of the court, may·

compound a debt or demand. (Secs. 5 and 6, art. 2, chap. 48, Gen. Stat.)

And certainly if these powers may be exercised, the chancellor has the power to authorize the funding of the bonds which are personal estate, in view of the facts which show that the guardian is not seeking to engage in an adventure; that the alteration sought will avoid a sacrifice of the bonds by their sale to pay the aforenamed debts, and be of great advantage and profit to the infant.

"From the hazard which guardians must otherwise run, it is common for them to ask the positive sanction of the court to any acts of this sort. And when the court directs any such change of property, it directs the new investment to be in trust for the benefit of those who would be entitled to it if it had remained in its original state." (Section 1357, Story's Eq.)

The conclusion we have reached is sustained by the case of Singleton v. Love, 1 Head (Tennessee), p. 362.

And while the doctrine is clearly laid down in Moore v. Moore, &c., 12 B. M., 662, that the weight of authority is decidedly against the power of a guardian to convert his ward's real estate into personalty, or his personalty into realty, the authority cited in Reeves' Domestic Relations, 334, is approvingly quoted, and it concludes by saying, "that a guardian is so far subject to this rule that he cannot thus change the property of his ward *without the authority of a court of chancery.*"

From this it is to be inferred that this court in that case recognized the power to rest with the chancellor in a case attended by such circumstances of benefit and profit as we have indicated in the above expressions.

Wherefore, the judgment is affirmed.