FRANK CARTER ET AL. *v.* PAUL I. BOOKER'S EXR.

[Abstract Kentucky Law Reporter, Vol. 4—722.]

**Good Faith of Trustee a Defense.**

Where a testator directs his executor to invest certain money of the estate for the benefit of another, and the executor has acted in

good faith in the exercise of a fair discretion, and in the same manner he would do in regard to his own property, he should not be held liable for any loss occurring in the management of the trust property.

## APPEAL FROM WASHINGTON CIRCUIT COURT.

### February 24, 1883.

OPINION BY JUDGE PRYOR:

In the year 1833 Cyrus Talbott, Sr., died in the county of Nelson leaving a last will and testament, by which he appointed Paul I. Booker, of Washington county, his executor. He left a considerable estate that he required sold and converted into money, and then invested "in the stock of some safe institution not under the control of the legislative acts of the legislature of Kentucky." Five thousand dollars was to be invested for the use of his daughter, Alice Denny, during life, the interest to be paid her, and then to go to her surviving children. Mrs. Denny died in the year 1860, leaving two children, one of them a daughter, Emma, who married appellant, Frank Carter, and they with Mrs. Laney are the appellants here. They claim by this action their part of the trust fund of $5,000, from the estate of Paul I. Booker, and the latter's representatives are defending upon the ground that he invested the fund in stock of the United States Bank of Pennsylvania, an institution not under the control of the Kentucky legislature, and that the investment when made was judicious and safe, at least thought to be so by prudent business men. He made the investments in the years 1837, 1838, 1839 and 1840. The appellants insist that the trustee in the first place had no right to make the investment in such stock, and in the second place that his negligence with reference to the fund caused its loss to the appellants, as the bank failed in the year 1841, and that appellee's intestate by the exercise of ordinary prudence might have ascertained its unsafe condition when and after he invested the money.

The investments were made more than thirty-five years before the action was brought and the appellee pleaded the statute of limitation. He also maintains that the trust fund terminated when the investments were made, and that the investments made had been approved and sanctioned by the chancellor in an action in equity to which these appellants were parties, instituted and determined in the Nelson Circuit Court.

We shall not consider the many points raised by the defense or undertake to decide those involved in much doubt, when in our opinion the case can be fully disposed of on the question of good faith and diligence by the trustee with reference to these investments. Booker, the trustee, has been dead for many years, and the particular reasons influencing him to make the investment in the Pennsylvania bank do not appear, but it is evident that when he did so he believed and had the right to believe that he was making a safe and secure investment for the beneficiaries. The responsibility of a trustee is thus defined by this court in the case of *Cross v. Petree,* 10 B. Mon. (Ky.) 413. "A trustee who, in the faithful discharge of his duty, has, in a mere matter of judgment or discretion, fallen into an error that has resulted in an injury to the persons interested in the trust, is not, in the general, responsible for the loss, where he has acted in good faith and not been guilty of gross negligence." Story's Equity Jur. (11th ed.), § 1272, says: "Where a trustee has acted with good faith in the exercise of a fair discretion, and in the same manner as he would ordinarily do in regard to his own property, he ought not to be held responsible for any losses accruing in the management of the trust property."

It may be argued that this general doctrine does not apply to cases where investments have been made not authorized by the chancellor nor directed in the instrument creating the trust. This must be conceded, and if no direction had been given the trustee in this particular case we should hesitate before sanctioning such an investment, either in or out of the state; and as was said by the Supreme Court of Pennsylvania in the case of Gerald's will, where money had been invested by the trustee in this same institution, the investment should have been made in pursuance of an order from the chancellor or in real or government securities. In Hemphill's case the trustees were only empowered to invest in good security, and there was no direction to purchase stocks of corporations. See Hemphill's Appeal, 18 Pa. 303. Here the trustee was directed by an express provision of the will to invest the money in some safe institution not under the control of the state government.

The testator was not willing that his property or its investment should be governed by the laws of this state, where the trustee could not have invested the money in bank stock without a direction by the will or the advice of the chancellor, but has required his

executor to leave the state and make investments elsewhere in some safe institution. The discretion was given the trustee of selecting that institution, and under such a power it would have been difficult for him to have found a more secure investment than in the stock of a good and solvent bank; and the fact that the bank in which the investment was made turns out to be insolvent does not of itself evidence bad faith. Such a discretion to a trustee to invest in the state of Kentucky would certainly prompt him in the exercise of a proper discretion to invest in the stock of one or more of the most reliable banks of the state, and the failure to do so by the light now before us might conduce to evidence the want of a sound judgment. The Pennsylvania bank was reputed to have a capital of $28,000,000 and the best business men in the city of Philadelphia deposited their money in the institution, and its paper was at a premium in the western states. There is not a single business man testifying who resided in the city of Philadelphia at that day, or elsewhere, who regarded the institution as unsound during the period at which these investments were made.

The appellee has taken the depositions of Cope, Sparhawk, Robbins, etc., all men of business capacity and commercial standing, who speak of the financial reputation of this particular bank in comparison with the other banks of the state. If the question had been asked either one of these witnesses as to the propriety of the investments at the time they were made the trustee would have been advised that it was as safe as any institution in the state of Pennsylvania; nor is there any testimony to the contrary. McElroy says he has an indistinct recollection that some one told him when he carried the money to Philadelphia for Booker (and he thinks it was Cope) that the institution was unsafe, and he so informed Booker on his return, and Booker responded that the money was where he wanted it. It is not pretended that this bank was in a tottering condition when McElroy deposited the money, and the only evidence in the case that could in any manner arouse the suspicion of the trustee was the failure to make dividends in the year 1839. Specie payment had been suspended, but the credit of the bank was not impaired, and business men had the utmost confidence in the security of the institution. Cope was at one time a director in the bank, and he says that McElroy is mistaken in saying that he suggested to him that the investment was not secure, for his advice would have been otherwise.

With the direction to invest in the stock of some safe institution out of the state, it would be a rigid rule of equity that would hold the trustee, who lived a thousand miles from where the investment was made, to know more about the condition of the bank than the business men of the city of Philadelphia where the bank was located. If he had gone to Philadelphia the information would have been given him up to 1840 and until the final breakup that its credit was not impaired, although the stock was below par during and after the year 1840. The testator knew where the trustee lived, and when he directed his funds invested out of the state he did not expect that the trustee would follow the funds with his presence to watch the rise or fall of the stock of the institution in which he might make the investment. Fluctuations in the value of stock existed then as now, and there is no such want of diligence shown by any fact in this record as should fix a liability on the trustee or those representing him. While the guardian or trustee may not convert the real estate of the beneficiary into personalty, or the personalty into realty, without the authority of a court of chancery, where he is authorized to sell and invest by the will, and that investment to be made in stocks of some institution, the discretion as to what institution shall have the fund is with the trustee, and unless he has acted in bad faith, or by his own neglect causes the loss, he is not liable. See *Thompson v. Pettibone,* 79 Ky. 319, 2 Ky. L. 341; Hill on Trustees, 560, *et seq.; Taylor v. Benham,* 5 Howard (U. S.) 233, 12 L. ed. 130.

The judgment below is therefore *affirmed* on the facts of the record as to all of the appellants.

*C. S. Hill, for appellants.*

*R. J. Brown, Hamilton Pope, Jas. S. Ray, for appellee.*