Judge Marshall
delivered the Opinion of the Court.
This was an action of detinue brought for the recovery °f a slave, bv Harrison, as administrator de bonis non, of Amelia Pirtle, against Chinn, administrator of Cowan, who had been the first administrator of Pirtle.
It appears that, after the death of Amelia Pirtle, the slave in question (which was her property at the time of her death,) being in possession of her mother, Mrs. Edger, who was one of her heirs and distributees— Cowan, then the administrator, anticipating a judgment against Mrs. Edger, in behalf of some third person, told her “that she would be pestered by the sheriff, unless she would place the slave spoken of, and another negro the property of said Amelia, in his hands for safe keeping.” Whereupon, Mrs. Edger having, as she states, the utmost confidence in Cowan, as her lawyer and as the administrator, consented to do whatever he advised, placed the negroes in his possession, and signed a writing which he then prepared: the object of which was, to put the property out of her hands, so that it could not be taken by the apprehended execution; and it was to have been surrendered to her after the debt should be arranged. But Cowan died, and the writing never was surrendered; and, fts proved by the affidavit of his administrator, it could not be found. It also appears, that Cowan had hired out the slave in contest, and Chinn, his administrator, having refused to deliver him to the administrator de bonis non of Pirtle, and claiming him as a part of the estate of Cowan, this action was brought.
These, and other facts not necessary to be detailed, haying been proved on the trial, the Circuit Court, on *303 motion of Cowan’s administrator, instructed the jury; that if they “believed from the evidence, that Mrs. Ed- “ ger had sold or transferred her interest in said negro, “ as one of the heirs and distributees of Amelia Pirtle, “ to James Cowan, deceased, they must find for the de- “ fendant.” On this instruction, a verdict and judgment were rendered for the defendant: to reverse which the plaintiff prosecutes a writ error.
The mere assent of an adin’r, that slaves descended, may pass to the beiis,is sufficient to render their title complete, & divests the adm’r of all right. And if a slave descends to several co-heiis, and the adm’r assents to the title of one of them, it is aprima facie) sufficient for all the heirs.
The assent of the adm’r may be ex press or implied. It may be shown by direct proof— or inferred from circumstances.
In a case referred to—an application ivas made to an ex’or to purchase a legacy; he Referred the applicant to the legatee^ that fact was hekl to be sufficientproofof his assent. So, also, where the ex’or had offered money to the legatee for the legacy. Where the ex’or himself purchases a legacy from the legatee, the act (showing that he admits the legatee’s right to sell) demonstrates that he has given a sufficient assent; and from the time of his purchase, he holds, not as executor, hut m his own right —But this is only where the thing itself, or the legatee’s share in it, is transferred, and for a valuable consideration—not where there is a mere nominal or voluntary, transfer; and where viso, the sale is of the thing itself—not merely of the uncertain, contingent interest which the legatee or heir has, while the executor’s right continues.
The right of the plaintiff to recover, depends essentially upon the question whether, by any act of Cowan’s during his life, his title to the slave, as administrator, ceased, and that of the heirs was perfected. For if this were the case, it is clear, that the slave no longer formed a part of the estate of Pirtle, and that the administrator de bonis non of that estate had no title to him.
It must, we think, be admitted that in case of slaves descended, the mere assent of the administrator is sufficient to divest his title and to complete that of the heirs; and it can hardly be doubted, that his assent to the title of one of several joint heirs, to whom a slave has descended, is sufficient (nothing else appearing) to change the entire title in that slave. And as the assent of the administrator may be implied, as well as express, and may be proved by circumstantial as well as by direct evidence, we should have little hesitation in coming to the conclusion, that the facts above stated, together with others which, like them, tend strongly to show that the administrator had admitted and assented to the ownership of the slave, in whole or in part, by Mrs. Edger, were sufficient to authorize a verdict against the title of the administrator de bonis non; if the jury, being left at at liberty to weigh the whole evidence, and draw their own inferences from it, had found such a verdict.
But the jury were not left thus at liberty, and the verdict rendered, under the instruction of the Court, shows nothing more than that in the opinion of the jury, Mrs. *304 Edger had sold or transferred to Cowan her interest in the negro, as one of the heirs and distributees of Amelia Pirtle. The judgment, therefore, stands, not upon the general tenor of the evidence, or its sufficiency to authorise the inference that the administrator had assented to the title or ownership of Mrs. Edger aiid the other heirs, but upon thé question whether the sale, or even the mere transfer of Mrs. Edger’s interest to Cowan, did not, as matter of law, either conclusively prove, or in itself constitute; such an assent to her title as divested him of his title, as administrator. And; indeed, as the evidence does not, in the slightest degree, conduce to prove, that there was any thing in the transaction between Mrs. Eldger and the administrator, Cowan, which could entitle it to the character of a sale; and as there is nothing from which it could be inferred either that any value vvas given by Cowan, or that any beneficial interest was acquired by, or was intended to be transferred to him; the propriety of the instruction, as well as the validity of the judgment, depe'nds upon the still narrower question, whether the mere naked transfer of Mrs, Edger’s interest to Cowan, no matter under what circumstances, or for what purpose, was of itself sufficient to destroy or disprove his title as administrator.
The argument in support of the instruction, is founded mainly upon'the analogy, which is admitted to exist to a considerable extent, between the relation which an executor bears to a specific legatee, in regard to the legacy bequeathed to him, and that which the administrator, according to our statute, sustains towards the heir, in regard to the slave descended to him. The authorities cited relate to the case of an executor, and to the mode and effect of his assent to a legacy. Any act or expression which shows the agreement of the executor, that the legatee or devisee shall have the thing devised, is a sufficient assent. And if the executor direct a purchaser to the legatee to buy the thing, or if he offers money himself to the legatee for the thing devised to him, such acts amount to an assent. So if the executor actually purchase from the legatee, the thing bequeathed or devised, this has been considered as “amounting first to a consent' *305 to the legacy or devise, and then to a sale by the legatee to the executor, for the money, eo instantV (4 Bacon's Abr. Title Executor, let. L. Toller's Law of Executors, 307-8.) .And in this manner, the title of the legatee being by the same act at once perfected and transferred to the éxecutor, the lattór is considered as holding it theiiceforth in his own right, as derived from the legatee, and not by his title as executor. But so far as we have seen, all the casés which go to establish the efficacy of this assent by implication, arising from the acquisition of the legatee’s title by the executor, are confined to cases of actual purchase, and include thé fact that the executor has given money, or other value, for the thing transfer* red. They contain, also, this additional feature, that the thing itself, or tho legatee’s title to it, is the subject transferred, and not a mere vague, uncertain and con* tingent interest hi it.
The acóeptancé by the adm’r, of á voluntary trans fer made to him, by the heir, of the heir’s intei’est, is not, it Seems, conclusive evidence Of the adm’r’s assent to the heir’s title—tho’ a fact from which that inference may be drawn—or may not, according to other circumstan ces.
The amount of A sale by the heir, of his inter est, before the adm’r has assented to his title, does not show that theheiv claim ed in absoluta right. Such sale should be understood, prima fa tie, as a sale of the contingent interest only.tho consideration may serve to explain the character of the sals. Without some explanation, it must be deemed to be the contingent interest only; and a sale of that, is no evidence of tho - administrator’s assent to the heir’s perfect right.
The purchase of the thing by the executor or admin* istrator, may well be considered ’as amounting of itself to an assent which changes the title, because the fact of purchasing for a valuable and adequate consideration, furnishes the strongest evidence of his admission and assent that the vendor is the owner of the thing sold. But it seems to us, that the mere acceptance of a voluntary transfer, is entitled to no such conclusive weight. It may, indeed, authorize the inference, that the administrator admits the absolute right and ownership of the party making the transfer. But this is not the necessary and inseparable inference from the fact. And, therefore, we are not willing to go beyond the Cases, and say that, as a matter of law, this fact alone and unexplained amounts to an assent by implication, and is sufficient to change the title by which the administrator holds.
But if this were otherwise, and if the mere acceptance of a voluntary transfer, for whatever purpose it may be made, should be considered as equivalent in its effect upon the administrator’s title, to an actual purchase by him: still we are of opinion, that the other dis* *306 tinction which has been noticed, is material, and that the said or transfer of the interest of Mrs. Edger in the slave, as heir and distributee, is not equivalent in this resPect to a sale or transfer of the slave himself, or of such portion as she claimed in him:
If an heir, before his title to a slave has been confirmed by the administrator, undertake to sell and transfer the slave to a third person; it is necessarily understood, that he thereby asserts the absolute ownership? and the unconditional right of disposing of the slave. The purchaser of course, in the act of buying, admits the right asserted by the vendor; and if the administrator is the purchaser, this admission is sufficient to confirm the right. But when the heir undertakes to sell or transfer his mere interest before his title to the slave in specie has been assented to by the administrator, he is not necessarily understood to assert an absolute ownership, or a right unconditionally to sell the slave. But, as his interest is a contingent one, subject to the exigencies of the administration, we should,say, that the sale Or transfer of his interest may and, prima facie, must, be understood as a sale or transfer of a contingent interest, which may amotmt to the absolute right of ownership, or may reach only to a third or a tenth of his value? or even less. And in any of these contingencies, the terms of the sale will be satisfied, if there was, in fact, any such contingent interest in the vendor.
The existence, then, of such an interest and the right to dispose of it, are all that is asserted on the one side? or admitted on the other, in the mere transfer of the interest of the heir. If it be a sale, and value is given, then the value of the interest is asserted or admitted; and the extent of the value given may explain the chai'ácter of the interest sold, and show to what Contingencies it is understood to be subject, and from what it is Understood to be relieved. Unexplained by this or other circumstances, the sale or transfer of the interest of an heir in a slave descended to him, but still subject to the title of the administrator, is to be taken as the sale or transfer of a contingent interest. And we are of the opinion that, although the assent of the administra *307 tor to the absolute right of ownership in the heir, would discharge the contingency; such assent is not involved in the acceptance of a voluntary transfer of a contingent interest, nor even in the purchase of such interest, unless the price given, or other circumstances, show that the real subject of the purchase was the absolute right.
It seems to this Court, therefore, that the instruction given by the Circuit Court, was erroneous, and, as there is no evidence in the record which is conclusive of the fact, that the administrator, Cowan, had, by acts or expressions, divested himself of his title as administrator, the judgment, for the error in the instructions, is reversed, and the cause is remanded, for a new trial, op principles consistent with this opinion,