*Woolley, Kinkaid and Bodley* for plaintiffs: *Robinson & Johnson* for defendant.

> ANDERSON
> *vs*
> IRVINE.
>
> By an ante-nuptial contract the property of the wife was conveyed to a trustee to her separate use. She gave a portion of it, (a slave,) by parol gift, to another— Held that no legal right passed which would authorize the donee to maintain an action at law for the slave.

---

## Anderson *vs* Irvine,

APPEAL FROM THE GARRARD CIRCUIT.

*Administrators and executors.   Executions.   Assets.   Distributees.*

JUDGE MARSHALL delivered the opinion of the Court.

THE only question in this case is, whether under an execution issuing on a judgment against an administrator *de bonis non*, to be levied on assets in his hands, &c. slaves are liable to seizure and sale, which, with the assent of the previous administrators, and during their ad-

> CHANCERY.
>
> Case 45.
>
> Oct. 20.
>
> The question presented.

ANDERSON
vs
IRVINE.

ministration, had been allotted, under an order of the County Court, and delivered to the widow as her dower in the slaves of the decedent. To this question the law, as heretofore understood in this State, prescribes a negative answer. The statute of 1798, (2 *Stat. Laws*, 1476,) after declaring that slaves shall be regarded as real estate, and shall descend to the heirs and widow of an intestate, provides "that they shall be liable for payment of debts, and shall be taken by execution for that end, as other chattels or personal estate may be." And the 37th section of the same act, allows an executor or administrator to sell slaves only for payment of debts, and in case of a deficiency of the personal estate for that purpose.

An adm'r. may sell slaves for the payment of debts, and represents *them* as fully in controversies respecting their title as any other assets, and no other can maintain detinue or trover for them, without the assent of the executor or administrator. Executor or administrator may sell slaves; though not necessary to pay debts, and pass good title.

Under these and other provisions of the statute, it has been decided that notwithstanding the general declaration that slaves are to be considered and to descend as real estate, they are placed in almost every particular, upon the footing of personal estate; that slaves are assets in the hands of the administrator, and he represents them as completely, in all controversies with regard to the title, as he does any other chattel; *Head, &c.* vs *Perry*, (1 *Monroe*, 255,) that before distribution he may maintain detinue for them, and is exclusively entitled to bring an action for any injury to them; *Cox* vs *Robinson's executor*, (1 *Bibb*, 604: 6 *Monroe*, 141;) *Woodyard's heirs* vs *Threlkeld*, (1 *Marsh*. 10.) That the right of the heir to a slave, before distribution, is like that of a specific legatee to a personal chattel before the assent of the executor, and he cannot maintain either detinue or trover; (*last case supra*,) that after the executor has assented to a division of slaves, the heir may maintain detinue therefor; *Gillispie* vs *Gillispie's heirs*, (2 *Bibb*, 89.) That if the executor will not assent to an action for the recovery of slaves, the heir may sue him and the holder of the slave in chancery; *Thomas* vs *White*, (3 *Litt*. 180.) And that the sale of a slave by an executor, (and it is the same with respect to an administrator,) though not necessary for payment of debts, vests the absolute title in the purchaser, and the heir must resort to the executor, and cannot pursue the slave in the hands of the *bona fide* purchaser; *Stamps* vs *Beatty*, (*Hardin*, 337.)

These cases clearly authorize the position that the heir does not, by the death of the ancestor and by descent merely, acquire a complete legal title, but that he acquires it only by distribution or the assent of the administrator; that slaves are not accessible to execution as being the property of the heir, but as being like personal chattels, the property, in a legal sense, of the administrator, or assets in his hands; and that by distribution, a slave becomes legally, the property of the heir, and therefore, ceases to be legally the property of the administrator, and is no longer liable as assets in his hands. And in the case of *Pirtle's administrator* vs *Cowan's administrator*, (4 *Dana*, 303,) which was an action of detinue by the administrator, *de bonis non*, against the administrator of the first administrator, in which the defendant attempted to protect his possession under a claim of title in the first administrator, derived from an heir, the Court say, that if by any act of the first administrator, his title as such to the slave ceased, and that of the heir was perfected, it is clear that the slave no longer formed a part of the estate of Pirtle, and that the administrator *de bonis non* of that estate, had no title to him. And it is there further decided, that the mere assent of the administrator is sufficient to divest his title and complete that of the heir.

On the authority of these cases, we conclude that by the division of the slaves under the order of the County Court, and with the assent of the first administrator, the title ceased in the administrators and became perfect in the widow and heirs, that the slaves were, of course, no longer assets in the hands of those administrators, and did not and could not become assets in the hands of the subsequent administrator *de bonis non*, in virtue merely of his appointment; and that consequently the slaves allotted and delivered to the widow, were not liable to seizure under an execution against the administrator *de bonis non*, as assets in his hands.

It is contended, indeed, that the distribution by the first administrators, before the debts were paid, and when the existence of the present demand was known, was fraudulent and void as to creditors, and therefore, as to them,

---

**Margin notes:**

ANDERSON
*vs*
IRVINE.

So on the death of intestate, slaves do not, by descent, become so far the property of the heir as to be liable to executions against the heir; after distribution by the adm'r. are not liable to executions against the adm'r.

An execution issued upon a judgment against an adm'r. *de bonis non*, cannot be levied upon slaves in the possession of the widow, which with the assent of the previous adm'r. had been assigned to her as dower by order of the County Court.

That one or more debts remained unpaid when an adm'r. consented to the distribution of slaves,

ADKERSON
vs
IRVINE.

does not of itself
warrant the con-
clusion that his
assent was fraud-
ulently given.

did not divest the title of the first administrators. But were it conceded that if the distribution should be deemed fraudulent and void, the consequence would be that so far as creditors were concerned, and for their benefit, the legal title to the slaves remained in the first administrators, and passed by operation of law to the administrator *de bonis non*, so that they might be reached by execution as assets in his hands; still we cannot admit that the mere fact of making or assenting to distribution of slaves while some debts or a particular debt remained unpaid, is necessarily fraudulent or even injurious to creditors. Slaves are assets in the hands of the administrator for payment of debts, not primarily nor absolutely, but only in case of a deficiency of personal assets. If there be no such deficiency, creditors cannot be injured by a distribution of slaves, but it is itself not improper, and cannot be fraudulent as to them. And if there be no reason to apprehend such deficiency, the administrator's assent to distribution cannot furnish even a remote inference of an intent to defraud or injure creditors. It does not appear that there were not, at the time of the distribution of the slaves, other assets in the hands of the first administrators, sufficient to pay all debts, nor does it appear that there is a deficiency in the hands of the administrator *de bonis non*, unless his failure to pay the execution be evidence of such deficiency. But even if it be, it does not prove a deficiency in the hands of the first administrators, when the slaves were distributed, and the question of fraud must be determined with reference to the condition of things at that time. In the absence of all evidence to the contrary, the fair presumption is, that the administrators exercised their honest judgment in view of the condition of the estate; and in assenting to the distribution of the slaves, they acted upon their responsibility to creditors under their official bond. The distribution should not be deemed fraudulent either on account of their mistake, should they have been mistaken, nor on account of any subsequent mal-administration by themselves, and much less by mal-administration of their successor, which may have produced or manifested a deficiency of assets.

But further, it is to be observed that it is not the duty of the administrator to convert the slaves into money, unless it be necessary for payment of debts; but the widow and heirs have a specific interest in them, which, like the interest of the legatee of a specific chattel, becomes a perfect title by the mere assent of the administrator. There is, therefore, a propriety in each case, in the surrender of the property when it can be safely made. And assuming, as we feel authorized to do, that after such assent or surrender by the executor, a specific chattel in the hands of the legatee, cannot be seized under an execution against the executor, we are satisfied that slaves cannot, after distribution, be seized under execution against the administrator. In neither case is the assent, though voluntary so far as respects the question of valuable consideration, to be regarded as *ipso facto*, fraudulent and void as to creditors, so as to allow them to treat the chattel or the slave as still in the hands of the executor or administrator. But if when the creditor comes there be a deficiency of assets, he may either pursue the administrator and his securities at law for *a devastavit*, or if there be sufficient equitable ground for so doing, may pursue them or the legatee or heir in chancery. We do not feel at liberty to sanction a departure from these established modes of proceeding, by presuming or declaring the distribution assented to by the first administrator to be fraudulent or void, because an execution against a subseqnent administrator *de bonis non*, has been levied on some of the slaves which were distributed.

We are of opinion, therefore, that the plaintiff's plea setting forth the allotment and delivery of the slaves to her as her dower, by the order of the County Court, and with the assent of the first administrators, and denying their being assets in the hands of the administrator *de bonis non*, was a sufficient answer to the avowry which relied upon a levy under a judgment and execution against the administrator *de bonis non*, and that the Circuit Court erred in sustaining a demurrer to said plea, and in the subsequent proceedings and judgment founded on the failure of the plaintiff to make further answer to the avowery.

ANDERSON
*vs*
IRVINE.

Distributees have an *interest* in slaves of their intestate, which becomes a *perfect right* upon the assent of the adm'r. So as to a chattel specifically devised.

Wherefore, the judgment is reversed and the cause remanded, with directions to overrule the said demurrer and for further proceedings.

*Turner and Goodloe* for appellant: *Robinson & Johnson* for appellee.