CASE 46—PETITION EQUITY—APRIL 22.

# Bank of Louisville v. Hall & Long.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. REAL ESTATE PURCHASED FOR PARTNERSHIP PURPOSES, and appropriated to those purposes, and paid for by partnership funds, becomes partnership property. (Parsons on Partnership, 363, 365.)
    The rule laid down and established in Cornwall, &c. v. Cornwall, &c., 6 Bush, 369, is adhered to and approved.
2. INDIVIDUAL INTERESTS IN REAL ESTATE CONVEYED TO A FIRM ARE SUBJECTED BY ATTACHMENTS to the payment of individual liabilities. Although such real estate was conveyed to and held in the firm name, it was not made to appear that it was purchased for partnership purposes, and appropriated to those purposes, and paid for by, partnership funds.

Bank of Louisville v. Hall & Long.

I. & J. CALDWELL, . . . . . . . . . . For Appellant,

CITED

Parsons on Partnership, pp. 362, 370-2, 375, 377, 634.
Civil Code, section 257.
3 Kent's Commentaries (Comstock's edition), 38.
7 Connecticut, 11, Sigourney v. Munn. '
4 Bush, 25, O'Bannon, &c. v. Miller, &c.
16 B. Monroe, 631, Galbraith v. Gedge & Bro.

BRUCE & RUSSELL, . . . . . . . . . . For Appellees,

CITED

11 Vesey, 657, Stuart v. The Marquis of Bute.
10 Leigh (Va.) 406, Pierce v. Trigg.
15 Johnson (N. Y.) 158, Coles v. Coles.
11 B. Monroe, 322, Buck v. Winn.
16 B. Monroe, 635, Galbraith v. Gedge.
13 B. Monroe, 414, Wilson v. Soper.
16 B. Monroe, 237, Ely, Clapp & Co. v. Hair.
24 Wendell, 389, Phillips v. Cook.
18 B. Monroe, 658, Watson v. Gabby.
3 Browne's Chan. Rep. 199, Thornton v. Dixon.
7 Vesey, 425, Ripley v. Waterworth.
7 Vesey, 455, Bell v. Phyn.
9 Vesey, 500, Balmain v. Shore.
1 Mylne & Keene, 649, Phillips v. Phillips.
3 Mylne & Keene, 443, Brown v. Brown.
7 Simons, 271, Randall v. Randall.
8 Simons, 529, Cookson v. Cookson.
4 Hare, 315, Custance v. Bradshaw.
7 Beavan, 548, Rowly v. Adams.
2 Sandford's Chan. (N. Y.) 366, Delmonico v. Guillaume.
5 Metcalf (Mass.) 562, Dyer v. Clark.
5 Metcalf (Mass.) 582, Howard v. Priest.
7 Connecticut, 11, Sigourney v. Munn.
1 Sumner, 182, Hoxie v. Carr.
4 B. Monroe, 459, Hewitt v. Sturdevant.
4 B. Monroe, 488, Divine v. Mitchum.
3 Kent's Commentaries, page 65.
2 Metcalfe, 356, Jones v. Lusk.
2 B. Monroe, 405, January & Huston v. Poyntz.
2 Dallas, 277, McCarty v. Emlen.
2 Yeates, 190, McCarty v. Emlen.
2 Hill (S. C.) 595, Knox v. Schepler.

VOL. VIII.—44

2 McCord (S. C.) 478, Schatzill v. Bolton.
4 Bush, 540, Williams v. Bush.
2 Johnson's Chan. Rep. 548, Moody v. Payne.
1 Stockton's Chan. Rep. (N. J.) 465, Young v. Frier.
4 Bush, 25, O'Bannon & Bashaw v. Miller, &c.
2 Duvall, 179, Northern Bank of Kentucky v. Keizer.
Parsons on Partnership, page 363.
Story on Partnership, secs. 92, 358, 368.
Gow on Partnership, page 33.
Collyer on Partnership (Perkins's ed.), sec. 154.
Story's Equity Jurisprudence, secs. 675, 678, 1253.
Civil Code, sections 484, 649, 713, 716.

JUDGE PETERS DELIVERED THE OPINION OF THE COURT.

This suit was instituted on the 7th day of May, 1867, by W. C. Hall and John S. Long, partners trading under the firm-name of Hall & Long, against David Watts and others, late partners doing business under the firm-name of Watts, Crain & Co., in the city of New York.

Appellees allege, in substance, in their petition that the defendants, as commission-merchants in the city and state of New York, and in Liverpool, England, during the years 1865 and 1866, sold for them a large quantity of cotton, and received the money therefor, amounting, after deducting commissions and charges, to the sum of five thousand dollars, no part of which had been paid, and all of said sum was justly due to them.

On sufficient grounds stated in the petition attachments were sued out, and levied on the property and effects of said firm and of the members thereof, all of whom were non-residents, and proceeded against as such, except H. F. Givens, on whom there was actual service of process.

An order of attachment, directed to the sheriff of Mc-Cracken County, was levied by him on lots Nos. 91 and 92, in block "nine," in the city of Paducah, as the property of David Watts and D. A. Given, as he states in his amended return.

In an amended petition appellees allege that the defendants were indebted to them over eight thousand dollars, instead of five thousand dollars as set out in their original petition, which was done by mistake, and they pray to have the error corrected, and for judgment for the sum claimed in the amended petition.

David Watts and Dickson A. Given, on the 15th day of November, 1867, in consideration (as they recite) of sixty-five thousand dollars to them paid in the paper of said parties of the first part, due and unpaid, and held and owned by the Bank of Louisville, Kentucky, and then delivered to said D. Watts and Dickson A. Given, co-partners and late bankers under the style of Watts, Given & Co., conveyed to said bank parts of said lots Nos. 91 and 92 in said city of Paducah, being the same lots on which appellees' attachments had been previously levied.

On the 23d of May, 1868, the Bank of Louisville, Ky., filed a petition in this case to be made a party, in which it states substantially that lots Nos. 91 and 92, on which appellees' attachments were levied, were not then, nor before nor since, the property of the defendants, Watts, Crain & Co., but that they belonged to D. Watts and D. A. Given, composing the firm of Watts, Given & Co.; that at the institution of this suit, and when the plaintiffs' attachments issued, said last-named firm was insolvent, and each member thereof was insolvent, and were jointly and severally unable to pay their debts, and, besides other large debts, said firm owed said bank sundry notes and bills of exchange, amounting in the aggregate to more than one hundred and fifty thousand dollars, and were struggling to settle with their creditors; that the bank agreed to take and did take from them the said lots, or parts of lots, Nos. 91 and 92, together with lot 93 adjoining, in discharge of eighty thousand dollars of their indebtedness to it, when said lots or parts of lots were not worth more than fifty

thousand dollars; that said property was owned by Watts, Given & Co., and was not the property of Watts, Crain & Co.; and that Watts, Given & Co. being insolvent, all their property and assets, real and personal, were necessary to pay their debts, and were insufficient therefor; and that the creditors of Watts, Given & Co. had the right to have all their assets and property applied to the payment of their separate firm-debts before any part thereof could be taken or applied to the payment of the debts of Watts, Crain & Co. And professing to have a claim and title to the property superior in law and equity to that of appellees, the bank prays that its right thereto may be established, and for effective relief.

On final hearing the court sustained appellees' attachments, and subjected the lots to the payment of their demand; and to reverse that judgment the Bank of Louisville prosecutes this appeal.

It is contended by appellant's counsel that the lots in question were partnership property, and in equity subject to the rules applicable to partnership personal property, liable to the claims of the partners on each other, and consequently subject to the debts of the partnership. Whether or not the learned counsel is sustained in his conclusions by the facts and circumstances developed, and the law applicable thereto, we proceed now to examine.

To ascertain when and by what means real estate becomes partnership property, Mr. Parsons, in his work on the law of Partnership, page 363, declares the general rule to be this: "Real estate purchased for partnership purposes, and appropriated to those purposes, and paid for by partnership funds, becomes partnership property; nor does it seem to be material in what manner or by what agency the land is bought, or in what name it stands." And on page 365 the same author says: "We consider that the three elements must unite in order to make the real estate *necessarily* partnership property."

The conveyances under which the property was held by the grantors of appellant are made to Watts, Given & Co.; but it does not appear from the face of either of said deeds, nor from any other evidence in the case, that it was purchased for partnership purposes or paid for with partnership funds.

It does not very clearly appear whether the partnership was formed to engage in the business of merchandising or banking. In the deed from Glenn to them, which was made in 1855, they are styled a firm of merchants; and in the deed to appellant, made twelve years later, they style themselves late bankers: so that it is probable that at the date of the first-named deed they were engaged in the mercantile business, and subsequently engaged in banking; or it may be that at the later period they may have been engaged in both pursuits. But whether one or both, it does not appear in evidence that the lots and buildings on them were occupied by the partners as houses in which they did business, or constituted a part of their stock in trade. From the return of the officer who levied the attachments it must be assumed that the houses were occupied by tenants or lessees as business-houses.

The deed under which appellant claims the property is made by David Watts and Dickson A. Given, who do not profess to hold it as partners, nor as such to convey it. And as early as December, 1858, Henry F. Given, who was then a member of the firm of Watts, Given & Co., conveyed all his interest in said lots, and all the other lands and lots in the county of McCracken, and all those in the state of Missouri and Illinois held in the firm-name of Watts, Given & Co., which interest he states in the deed to be one undivided fourth; and the wife of the grantor joined him in the deed, relinquishing her possible right to dower in said lands.

The firm of Watts, Given & Co. was composed of three members. There is no evidence that they were not equally interested in the business, and in the absence of such evidence

it should be assumed that they were; but they did not own said lands in equal shares; for, as we have seen, the interest of H. F. Given in said lands and lots was only *one fourth,* which tends to show that they were not paid for with partnership funds, or each would have had one-third interest; and certainly the lands and lots in Missouri and Illinois were not and could not be appropriated to the purposes of their partnership. These facts establish the conclusion that said lots and lands in the county of McCracken, as well as those in Missouri and Illinois, were purchased as a speculative investment, an enterprise not within the object and purpose of the partnership.

But the question was considered by this court in the recent case of William Cornwall, &c. v. Amelia Cornwall, &c. (6 Bush, 369); and we are disposed to adhere to the doctrine therein expressed. The court said, after stating that there was a conflict of the authorities among the American courts: "But upon a review of the authorities, the analogies, and reasons of the law, we conclude that a safe and reliable rule may be deduced as to that class of property to which this evidently belongs; that is, when property is bought with partnership funds to be used in carrying on and facilitating the partnership -business and purposes, and is used as a means of continuing and enlarging the partnership business, operations, and profits, it then is partnership property, impressed with the characteristics of personalty for any and all purposes, not only between the partners *inter se* and the firm and its creditors, but also as to distribution between administrators, distributees, and heirs."

It has been heretofore shown that the lots in contest were not used for partnership purposes, and as a means of continuing, facilitating, and enlarging the business, or even for any one of those objects, and consequently are not within the rule prescribed in the case referred to, and are not impressed with the characteristics of personal property.

Wherefore the judgment is affirmed.