### PERIN et al. v. MEGIBBEN et al.

#### (Circuit Court of Appeals, Sixth Circuit. November 18, 1892.)

1. JURISDICTION OF FEDERAL COURTS — DIVERSE CITIZENSHIP — ARRANGEMENT OF PARTIES.
　　Where a part owner of a distillery joins a number of associates in a contract to purchase the whole, and for that purpose agrees to convey his existing interest therein, and afterwards, being ready and willing to perform his contract, joins with the other vendors in a suit for specific performance, he is a proper party plaintiff, and cannot be considered a defendant for the purpose of destroying the diverse citizenship necessary to maintain the suit in a federal court. 49 Fed. Rep. 183, affirmed.

2. SPECIFIC PERFORMANCE—STOCK OF CORPORATION.
　　A clause in a contract providing for the purchase of all the stock of a distillery company may be specifically enforced against the purchasers when it appears that it was only adopted as an expedient to secure the performance of the main stipulation, which was for the transfer of the real estate and plant. 49 Fed. Rep. 183, affirmed.

3. PARTNERSHIP—FIRM REAL ESTATE—AUTHORITY OF SURVIVING PARTNER.
　　Where one partner in a firm which is engaged in operating a distillery dies while the real estate is incumbered by mortgage to secure partnership debts, and while the firm is under contract to feed cattle, and liable in damages for nonperformance thereof, the surviving partner may have

power, under the Kentucky decisions, to continue the business for the purpose of discharging these obligations, or to sell the whole property, including the real estate, for cash, but the existence of the obligations will not authorize him, as against the heirs of his copartner, to convert the partnership into a corporation, and convey the real estate to it for shares of stock.

**4.** SAME—LANDS TREATED AS PERSONALTY—RIGHTS OF HEIRS.

Where a distillery is purchased with partnership funds, and the naked real estate on which it is situated forms but an insignificant part of its value, it will be presumed, under the Kentucky decisions, nothing appearing to the contrary, that the land was to be treated as personalty, as this would be for the benefit of the partnership in order to secure a prompt and profitable disposition of the firm assets; and the surviving partner can convey the whole beneficial interest, leaving only a naked legal title in the heirs. Carter v. Flexner, (Ky.) 17 S. W. Rep. 851, considered and distinguished.

**5.** SAME.

Where, however, the real estate originally belongs to one of the partners, and several years after the formation of the partnership he conveys a one-third interest therein to his copartner, the land cannot be considered as personalty, and on the death of the grantor his interest in the land will be subject to dower, and will pass to his heirs in the usual course of descent.

**6.** GUARDIAN AND WARD—SALE OF LANDS—POWERS OF EQUITY COURTS.

In Kentucky it is the settled rule that the powers of the equity courts to sell and reinvest an infant's real estate are not inherent, but are merely statutory, and the statutes must be strictly followed, or the proceeding is a nullity.

**7.** SAME.

A partnership owned and operated two distilleries situated on separate tracts of land, one of which was purchased with the partnership funds and treated as personalty, while the other was held as real estate, each partner owning a distinct interest. One partner died, and the other organized two corporations to carry on the business of the distilleries respectively, and conveyed to them the whole property, including the real estate. Afterwards the guardian of the infant heirs of the deceased partner commenced a proceeding in chancery under Civil Code Ky. § 489, relating to the sale and reinvestment of infants' lands, which proceeding resulted in a deed by the commissioner purporting to convey the infants' title to the corporations respectively. In this proceeding, however, the guardian failed to give the bond required by section 493, and, moreover, a reinvestment of infants' lands in the shares of a corporation was not authorized by the statutes. Gen. St. Ky. c. 48, art. 2, § 19. Held, that the proceeding was a nullity, and neither divested the beneficial interest of the heirs in the land which was owned in separate interests by the partners nor transferred their naked legal title to the land which was treated as personalty.

**8.** SAME.

Civil Code Ky. § 490, authorizes a sale by proceedings in chancery of real estate owned jointly by two or more persons when the same cannot be divided without materially impairing its value, even though some of the owners are infants or of unsound mind. Section 497 declares that on such a sale the share of an infant or person of unsound mind shall not be paid by the purchaser, but shall remain a lien on the land, bearing interest, until the disability is removed, or until the guardian or committee executes a bond as required by section 493. Held, that these provisions show that only a sale for money in cash or on credit is authorized, and an exchange for shares of stock in a corporation, to which the land is conveyed, is void. 49 Fed. Rep. 183, reversed.

Appeal from the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

In Equity. Bill for specific performance, brought by James W.

Megibben and Elizabeth Megibben, as administrators of the estate of Thomas J. Megibben, and James K. Megibben, against Oliver L. Perin, Timothy Hayes, and George Hubbell. The circuit court entered a decree for complainants. 49 Fed. Rep. 183. Respondents appeal. Reversed, with instructions to dismiss the bill.

Statement by TAFT, Circuit Judge:

James W. Megibben and Elizabeth Megibben, as administrators of the estate of Thomas J. Megibben, deceased, and James K. Megibben, filed their bill in the court below for the specific performance of the following contract:

"In consideration of the sum of twenty-five dollars, the receipt of which is hereby acknowledged, said payment having been made by O. L. Perin upon behalf of himself and others unto James K. Megibben and the heirs of Thos. J. Megibben, deceased, and of the undertakings of said Perin for himself and others, as hereinafter set forth, it is agreed as follows: Said Megibben hereby agrees to sell and convey unto said Perin, for himself and others, the distilleries Excelsior and Sharpe, situated at Lair's Station, Kentucky, with all grounds connected therewith, being above sixteen acres, more or less, and all flour mills, warehouses, buildings, and outbuildings connected therewith, and all good will, brands, trade-marks, copyrights, patents, lately held by Thomas J. Megibben, deceased, and James K. Megibben, and used by him and J. K. Megibben in connection with their business in or about said distilleries and flour mill, or either of them, and the right to use all patents or processes used by him or them in distillation, and all appurtenances and appliances connected with said distilleries and premises. Said property to be conveyed by deed of general warranty, free of all incumbrances. Taxes now levied to be paid by vendor. Price to be paid for said property, $42,500, to be paid in cash on delivery of the deed, after examination and approval of title."

"Cincinnati, July 9, 1890.

"It now appearing that the above properties are owned by two corporations, the agreement is that the entire stock of said corporations shall be transferred to Perin and associates upon the above considerations, said corporations being free from all indebtedness. The boarding-house property shall be conveyed to said Perin on said consideration.

"Jas. K. Megibben,
"James W. Megibben,
"James W. Megibben,
"Adm'r Estate of T. J. Megibben.
"O. L. Perin,
"For Himself and Associates."

O. L. Perin, in signing this contract, acted for himself, Timothy Hayes, and George Hubbell, the appellants, and defendants below. It appeared that James K. Megibben agreed with Perin and his associates that he would take one fourth of the distilleries to be purchased under this contract, and would act as partner with them in the conduct of the distilleries, it being deemed important by the purchasers that the name of Megibben should be connected with the new business. The agreement with Megibben was made at the same time that the contract of purchase was entered into.

As the main question in the case turns on the title of the distillery companies to the real estate described in the contract, it is necessary to set out the history of that title in some detail.

Thomas J. Megibben, by deed of October 12, 1867, purchased 227 acres from the administrator of J. W. Lair, deceased. On the 28th day of October, 1868, he and James K. Megibben became associated as partners in the distilling of whiskies. Thomas J. Megibben set aside from this 227-acre tract a small lot containing about 5 acres, upon which the partners with partnership funds erected the distillery. In 1873 T. J. Megibben and his wife conveyed to James K. Megibben in fee an undivided third of said five acres for the consideration of $417.29, the deed containing this recital:

"It is understood that this conveyance is to operate as of date the 28th of October, 1868, at which date the said Thomas J. Megibben sold James K. Megibben the said undivided third part of the aforesaid tract of land with the

view of forming a copartnership to erect a distillery, etc., on said tract, and to distill whisky thereon; and since said last-mentioned date said distillery and other buildings have been erected on said tract by Thos. J. Megibben and James K. Megibben, and the consideration aforesaid is only for the undivided third part of said tract of land, and not for said improvements thereon."

The five acres so referred to is the tract upon which the Excelsior distillery stands. The partnership business was actively continued down to October, 1880, when the partners purchased a tract of about 10 acres, known as the "Sharpe Distillery Tract," together "with the mill and distillery buildings, improvements, machinery, fixtures, and appurtenances of whatever nature or description thereunto belonging or appertaining." This land had on it a flour mill and distillery. In the conduct of the business of the Sharpe distillery the partners had equal shares. The firm continued the manufacture of whisky and the making of flour on both properties until the death of T. J. Megibben, in January, 1890. At that time the Excelsior distillery was in active operation. The firm had a large quantity of grain on hand, and were under contract to feed about 300 cattle, the fulfilment of which, if the distillery did not operate, would result in a loss of from $50 to $75 a day. The Sharpe distillery had just been refitted and improved, and its operation was about to begin. There was a mortgage of $2,700 on the Excelsior distillery and $7,000 on the Sharpe property. Under section 3262 of the Revised Statutes of the United States, before a bond of a distiller is approved, (which is a condition precedent to the operation of his distillery,) he is required to file with the collector of internal revenue the written consent of the owner of the fee, duly acknowledged, that the premises may be used for the purpose of distilling spirits.

Upon the death of the elder Megibben, the collector of internal revenue, in accordance with section 3262, Rev. St., required the consent of the owners of the fee, and thereupon, to obviate the difficulty, James K. Megibben, as surviving partner, organized and incorporated under the laws of Kentucky two distilling companies,—one, the Megibben Excelsior Company, for the operation of what we have described as the Excelsior distillery, and the other, the Sharpe Distillery Company, for the operation of the Sharpe distillery, each with a capital stock of $75,000, divided into 750 shares of $100 each; and on January 30, 1890, he conveyed, as surviving partner of the firm of T. J. and J. K. Megibben, the two tracts to these companies respectively, in consideration of the entire capital stock of each. The collector of internal revenue still declined to approve the distiller's bond necessary to the operation of the distillery under the federal law, on the ground that the title to T. J. Megibben's interest was in his widow and heirs, and that the surviving partner had not authority to convey that interest to the companies. Thereupon, in February, 1890, the widow and adult heirs of T. J. Megibben conveyed their interests in the two distillery tracts to the two companies respectively.

About the same time proceedings were also instituted in the Harrison county chancery court by Elizabeth Megibben, wife of T. J. Megibben, as guardian of her three minor children, and also in her own name and right, against the two distillery companies, J. K. Megibben, and the adult children and heirs of T. J. Megibben, five in number. There were two petitions filed, one in the case of each distillery. The petition with reference to the Sharpe distillery averred the death of T. J. Megibben, set out the heirs, adult and minor, which he left; the appointment of Elizabeth Megibben as guardian of the minor heirs; her execution of the bond required by law; the partnership of T. J. and J. K. Megibben in the manufacture and sale of whisky; the purchase by them of the Sharpe tract, and the ownership by each of them of a one-half interest; and alleged that the property was all paid for with partnership funds, was used and occupied by them as partners in the distilling of Bourbon whiskies and the operation of a flour mill, and that the property was not useful for any other purpose, and could not be used for any other purpose, than that for which it was purchased by the firm. The petition further recited the sale by James K. Megibben, as surviving partner under a claim of right to make it, of the Sharpe distillery tract to the Sharpe Distillery Company; and averred that he had transferred and assigned one half of the stock to the heirs and widow of T. J. Megibben, and the other half thereof to himself. The petition continued:

"Plaintiff further states that the sale of said real estate with the distillery and other improvements thereon by the said James K. Megibben for the consideration above stated is an advantageous disposition of the property, and is beneficial to the interests of all parties concerned therein, and more especially to the wards of the plaintiff. In fact, the interest of her wards require that the said sale should be made, and that the sale as made by the surviving partner should be condoned and approved by the chancellor; and that the interests of said infants require that this court should order the commissioner of this court to make conveyances of the interests of the said infants in and to the said property to the defendant the G. R. Sharpe Co., and confirm said sale."

The petition further stated that the adult heirs of T. J. Megibben and his widow had already executed a deed of conveyance for whatever interest each of them had in the property to the said company, and "that the incorporators of said company are James K. Megibben, J. M. Kimbrough, and J. W. Megibben, and that these, together with the other children and heirs of T. J. Megibben and his widow, are the owners of the same quantities of stock of the said company that they owned in the partnership property before the sale thereof by the surviving partner." The petition concludes with a statement of the difficulty which arose in the operation of the distillery under the federal law, already described.

The petition in the Excelsior distillery case contained allegations similar to those in the Sharpe case. To the petitions answers were filed by James K. Megibben, by the adult heirs, and by the defendant companies, admitting the allegations of the petitions, and joining in the prayers thereof. The answers of the companies averred that each had complied with its contract, and had issued to the complainants and other defendants all the stock to which they were entitled. A joint entry in the two cases was made by the chancery court, granting the prayer, and ordering the necessary master's deeds.

The administrators of the estate of T. J. Megibben were appointed and qualified in February, 1890. They were not made parties to the proceeding in the chancery court.

Evidence in this case and before the chancery court shows that it was of great importance in maintaining the value of a distillery that the operation be continuous, in order that the brands of whisky should be kept on the market. The distilleries were operated by the two companies from March until July, 1890. In July, 1890, at the time when the purchasers refused to take the title, the mortgage of $2,700 on the Excelsior property had been paid off. The vendors were ready, on the payment of the purchase price, to pay off the $7,000 mortgage on the Sharpe distillery tract. There were indorsements of the Sharpe Distillery Company unpaid, amounting to about $9,000, all of which were secured by more than that amount in value of whisky stored in the distillery warehouses. There were claims against the estate of T. J. Megibben, but there was other property of the deceased, amply sufficient to pay them. In October, 1890, the shares of stock in the two companies were tendered by James W. Megibben and Elizabeth Megibben, administrators of the estate of T. J. Megibben, to Perin, Hayes, and Hubbell under the contract, and were refused, whereupon the complainants filed their bill for specific performance herein.

The defendants below answered, averring—First, that the contract was made by Perin on behalf of himself, Hayes, Hubbell, and James K. Megibben; that Megibben was a necessary party defendant, and, as he was a resident of Kentucky, the court had no jurisdiction; and, second, that both corporations were in debt, and that the title to their property was imperfect and incumbered, in violation of the contract stipulations; and, finally, that the defendants had declined to proceed with the purchase on this account, and had notified the plaintiffs, who acquiesced in the abandonment of the contract. By replication issue was made on these defenses. The case proceeded to a hearing, and the decree for specific performance was entered from which this appeal was taken.

Errors were assigned to the holding of the court on the grounds—First, that specific performance would not lie; second, that the plaintiff James K. Megibben was a necessary party defendant, and that the court had not jurisdic-

tion of the suit; third, that the title of said companies in said real estate was not good and sufficient; and, fourth, that the plaintiffs were not the owners of all of the capital stock of the Excelsior Company and the R. G. Sharpe Company.

Lawrence Maxwell, Jr., for appellants.

H. D. Peck, for appellees.

Before JACKSON and TAFT, Circuit Judges.

TAFT, Circuit Judge, (after stating the facts.) The first error assigned to the finding and decree of the circuit court is based on the claim that the contract cannot be specifically enforced, because it is for the purchase and sale of personal property. The point has not been pressed, either in the brief or on the argument, and hardly needs consideration. The agreement was in form a contract to buy all the shares of stock in the incorporated companies. The language of the contract shows that the real agreement was to buy certain real estate, together with the personal property connected with its use for milling and distilling purposes. Without discussing the question whether the sale of shares of stock can be specifically enforced in equity, it is sufficient to say that the sale here was in fact a sale of real estate, and the circumstance that personalty was included in the sale would not affect the power of a court of equity to afford relief by requiring specific performance. See Leach v. Fobes, 11 Gray, 510.

The second error assigned, that the court did not have jurisdiction, for the reason that James K. Megibben, a resident of Kentucky, was a necessary party defendant, is not of weight. Megibben is a party plaintiff. He is one of the vendors; and even if he were, under the facts of the case, also one of the vendees, he is willing to comply with his part of the contract. The language of the court below upon this point meets our concurrence:

"James K. Megibben is not a party defendant, nor can he in any way be regarded as such. It is true that he is one of the associates of the defendant Perin, but he is ready and willing to perform the contract. The decree is sought against Perin and his associates who are unwilling, and it would not be against him, but against them, to compel them to join in receiving and paying for the capital stock which represents the real property involved. He is therefore properly a complainant, and as much interested in securing a decree against the defendants as are his co-complainants."

The assignment of error upon which the decision of the case must turn is based on the holding by the court below that the title of the distillery companies to the real estate was good and sufficient. It is an express stipulation of the agreement that the money was to be paid upon the delivery of the deed, and after examination and approval of the title. This required, of course, that the title should be good. The distilling companies have all the title of James K. Megibben and wife and the widow and adult heirs of T. J. Megibben. The only question in the case relates to the undivided interest in each tract, the legal title to which, by the death of T. J. Megibben, was cast upon his three minor heirs. The argument upon appellees' behalf is that the land so bought by T. J. and J. K. Megibben was purchased with partnership funds, and was used for partnership purposes, under an implied agreement that it should be personal property out

and out; that by the law of Kentucky, on the death of T. J. Megibben, the full equitable title to this property vested in J. K. Megibben, the surviving partner, in trust to discharge the debts and obligations of the partnership, and to adjust the equities between the partners, and with power to sell the equitable title for these purposes; that, after the satisfaction of such debts, obligations, and equities, or at once upon T. J. Megibben's death, if it should be found no such debts or equities existed, the equitable title passed to the personal representatives of T. J. Megibben for distribution as personal property; that nothing but the naked legal title to the undivided interest of the deceased partner descended to the heirs, and that this a court of equity, in a proper proceeding, might compel them to convey as either the surviving partner or the personal representative, in his lawful right to transfer the whole beneficial interest, should direct; that the personal representatives and the surviving partner have united in conveying the equitable title to the distilling companies; that the adult heirs have also conveyed their title; and that by the Harrison chancery court proceedings the legal title of the minor heirs has been divested and transferred to the two companies, thus making in the latter a perfect title to the entire property.

If the court of appeals of Kentucky have clearly laid down in their decisions a principle affecting the devolution of the equitable title to partnership real estate upon the death of one partner, it is a rule of property which the federal courts will respect and follow, instead of exercising their independent judgment, as they do with reference to questions involving the general common law of the state. Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. Rep. 10.

The law as to the disposition, distribution, or descent of the interest of a deceased partner in partnership real estate has been considered by the court of appeals of Kentucky in the cases of Galbraith v. Gedge, (1855,) 16 B. Mon. 631; in Cornwall v. Cornwall, (1869,) 6 Bush, 369; in Bank v. Hall, (1871,) 8 Bush, 672; in Lowe v. Lowe, (1878,) 13 Bush, 688; in Holmes v. Self, (1881,) 79 Ky. 297; in Caskey v. Caskey, (1884,) 5 Ky. Law Rep. 775; and in Flanagan v. Shuck, (1885,) 82 Ky. 619. In Cornwall v. Cornwall, Lowe v. Lowe, Holmes v. Self, and in Caskey v. Caskey, the question was between the heirs and distributees of the deceased partner, as to whether in equity the partnership real estate, after the payment of the debts of the partnership, should descend to the heirs or should pass to the distributees. From these cases it is clear that for 30 years the rule of property governing the descent and distribution of partnership real estate on the decease of a partner has been as follows:

First. The legal title to partnership real estate held in the names of the partners descends to the widow and heirs of each, exactly as it would were the partners tenants in common.

Second. Where real estate is purchased with partnership funds for partnership purposes, it is partnership property, to which the surviving partner has an equitable title, and which he may sell to pay partnership debts or settle partnership equities, compelling, by aid of a court of equity, the heirs of the deceased partner to perfect the sale by deeding such title.

Third. In the absence of any agreement between the partners, express or implied, to the contrary, both the legal title and the beneficial interest in the surplus of such partnership real estate, after the debts and the equities of the partnership are satisfied, descend to the heir at law.

Fourth. When, however, there is an express agreement between the partners, or one which can be clearly implied from the circumstances, to consider and treat such real estate as part of the personal property stock of the partnership, then, though the legal title to the deceased partner's interest descends to the heir under the statutes of descent, the equitable title, and the full beneficial interest, after the payment of the partnership debts and adjustment of the equities between the partners, vest in the personal representatives of the deceased partner for distribution as personal property, and to this end a court of equity may force a conveyance of the legal title from the heirs to the vendee of the personal representatives.

In December, 1891, the court of appeals of Kentucky decided the case of Carter v. Flexner, 17 S. W. Rep. 851. In that case the surviving partner of a firm which had been engaged in buying and selling real estate made a contract to sell certain of the real estate bought by the firm with partnership funds in the course of partnership business. There were debts of the firm to be paid by the proceeds of sale. The contracting purchaser refused to comply with the contract, on the ground that the surviving partner was not invested with the legal title to the real estate. The court held that the surviving partner could not convey a good title except to his one-half interest, and that the heirs of the deceased partner should be required to convey their legal title to the purchaser, if an advantageous sale, or one of fair value, had been made in good faith by the survivor. There was nothing in the conclusion reached which required a departure from the principles already laid down in the cases to which we have referred. The learned judge who delivered the opinion, however, used language emphatically indicating a desire to break away from the rule stated in the fourth paragraph above, under which partnership real estate, by agreement, express or implied, between the partners, may be converted into personalty "out and out." The report of the case in the Southwestern Reporter contains a memorandum from the files of the court of appeals that the case is not to be officially reported. Just what the considerations are which lead that court to order cases not to be reported we do not know, but it would seem clear that, if it were intended by this decision to reverse and obliterate the doctrine of the conversion of real estate into personalty "out and out," which has been in force in the state for more than 35 years as a rule of property, the court would have ordered the case to be officially reported. In the case of Turman v. White's Heirs, 14 B. Mon. 450, 461, Chief Justice Marshall refers to a decision of the court of appeals as of doubtful authority because withheld from publication. But, whatever the inference to be drawn from the failure to officially report a case in the court of appeals, we do not feel at liberty to disregard the line of authorities referred to, and to depart from the rule so clearly laid down in cases where the exact

point was involved, by reason of language in a subsequent opinion, which, however forcible and weighty, must nevertheless be regarded as obiter dictum in the case in which it was used.

Coming now to the application of the principles relating to partnership real estate in Kentucky to the facts of this case, we must first consider the contention of counsel for appellees that there were partnership debts and obligations which conferred upon the surviving partner an equitable title and trust to sell the property to the distillery companies. There was a mortgage of $2,700 on one of the distillery tracts and of $7,000 on the other at the time of the death of T. J. Megibben, but it does not appear that there was not enough personal property to pay these debts. The firm was under contract to make whisky and feed cattle, and liable in damages for nonperformance. Such a condition of the affairs of the firm would doubtless authorize a continuance of the business by the surviving partner for the purpose of discharging those obligations at the joint risk of the living partner and the estate of the deceased partner. See 2 Bates, Partn. § 730. It might also, if by the sale of the property those obligations could be discharged, confer the right on the surviving partner to sell the whole partnership stock, including the real estate; but such a sale, as against minor heirs having a beneficial interest in the same, must be a sale for cash. No authority has been cited which justifies the claim that a surviving partner may exchange the partnership stock and real estate for shares in a corporation, even though the shares represent an interest in the real estate originally held. The control and management of the property under a corporation and under partnership ownership are quite different. This so-called "sale for stock" is in fact an exchange of one kind of property for another, and there is no rule of law or precedent conferring such power on the surviving partner. The difficulty arising from the internal revenue laws could not be obviated in that way. It might, perhaps, have justified a sale for a money consideration.

It remains to consider the last and chief contention of appellees, that in equity the undivided interest of the deceased partner in this real estate was personal assets descending to the personal representatives. If so, then, by deed of the administrators, who were the complainants below, the full equitable title to this undivided interest might have been conveyed to the purchasers here. It is true there is no such deed shown in the record from the administrators to the distillery companies, but such omission could be easily supplied by making the execution of such a deed the condition of a decree for specific performance, and we may consider the case on the theory that such a deed has in fact been executed. There is no doubt, we presume, of the general power of the administrators, under the law of Kentucky, to reduce to money an undivided equitable interest in real estate held by them as personalty, provided such sale is not fraudulent, or grossly inadequate. Cook v. Burton's Adm'r, 5 Bush, 66; Anderson v. Irvine, 6 B. Mon. 233; Ward v. Lewis, 3 J. J. Marsh. 505; Haddix v. Haddix, 5 Litt. 201.

We have still to consider, therefore, whether the circumstances in the case at bar are such, with reference to the two distillery tracts, that

in accordance with the Kentucky law of partnership, above stated, an agreement can be clearly implied between the partners to treat the two distillery tracts as personalty out and out. With reference to the Sharpe distillery tract, there will be little difficulty in implying such an agreement. That tract was bought with partnership funds for the purpose of being used in the partnership business. The business was a manufacturing and trading business. The evidence would seem to show that the naked real estate, in point of value, was an insignificant part of the firm capital invested in the business. Nineteen twentieths of the partnership capital was in the plant, improvements, and good will of the distillery. The value of a distillery is largely dependent on the circumstance that the brand of whisky which is manufactured there is kept on the market. It would seem to be a reasonable inference from these facts and others in connection with the business that the real estate, the plant, the improvements, and the personal property, together with the good will, the brands, secret processes, etc., all went to make up an entire thing, which, if separated into its parts, would diminish in value, and lose its usefulness as a money-making investment. It would be to the interests of the partners, therefore, to have the real estate treated as a part of the personalty on the dissolution of the firm, in order to secure a prompt and profitable disposition of the firm assets, and the presumption may well be indulged that such was their intention and tacit agreement.

In reaching a similar conclusion in respect to the Megibben distillery tract, however, we encounter a serious obstacle. The land upon which the distillery stands was not purchased with partnership funds, and by all the Kentucky cases this is indispensable to a conversion of real estate held by partners into partnership personalty "out and out." The distillery lot was, as we have before said, part of a 227-acre tract bought by T. J. Megibben a year before the partnership was formed. Some five years after, he and his wife conveyed an undivided one third of the lot to his partner, J. K. Megibben. The remaining undivided two thirds, T. J. Megibben held just as he held the rest of the 227 acres. Even if it be conceded that the recital in the deed to J. K. Megibben shows that the transaction was in reality intended between the partners to be a transfer of the land from T. J. Megibben as an individual to himself and his partner as a firm, each partner contributing his pro rata share of the consideration, still we cannot infer any intention on the part of T. J. Megibben to treat the real estate as personalty for the purposes of distribution on his death. The dower right of his wife in the undivided two thirds of the tract was exactly the same as it had been before the partnership was formed, and by no principle of law or equity could she be deprived of her beneficial interest in it. The equitable doctrine of the "out and out" conversion of partnership real estate into personalty, under which the widow is deprived of benefit from her dower estate in the land, is worked out on the theory that, the land having been acquired with partnership funds, there is imposed on those on whom the legal title is cast, a trust to execute the purposes for which the partners bought it; and, if one of these purposes was an "out and out" conversion into personalty, this excludes any beneficial dower

interest. But here, where the fee vested in the husband before there was a partnership, there is no ground for imposing such a trust on the widow, and no room, therefore, for the application of the doctrine. To deprive her, either in law or in equity, of all beneficial dower interest in the Megibben distillery tract, she must have released it to the firm. In the absence of such a release, we cannot infer an intention on her husband's part that this land should be treated as personalty for distribution by his administrator. It is true that the widow has now deeded her interest in the land to the distillery company. That, however, does not change the fact that on her husband's death she had a beneficial interest in it as his widow, and that he intended she should have. If so, it follows that his children had a beneficial interest in it as heirs, for it would be absurd to say that the deceased partner intended the land to be real estate as to the widow and personalty as to the heirs.

For these reasons we cannot hold that the Megibben distillery tract passed as personalty to the administrators of T. J. Megibben for distribution. The result is that the legal and equitable title to an undivided interest in the Megibben distillery tract is outstanding in the minor heirs, unless it has been transferred to the Megibben Distillery Company by the Harrison chancery proceedings. With reference to the Sharpe distillery tract, the naked legal title to an undivided interest in that tract is outstanding in the minor heirs, unless it has been transferred to the Sharpe Distillery Company by the same chancery proceedings.

It only remains to examine and determine the validity and effect of the proceedings in the Harrison chancery court.

First, as to the Megibben distillery tract. It is established by the cases of Barrett v. Churchill, 18 B. Mon. 387; Henning v. Harrison, 13 Bush, 723; Walker v. Smyser's Ex'rs, 80 Ky. 620,—"as the settled rule of Kentucky, that the powers of the courts of equity simply to sell and reinvest infants' real estate are statutory, and not inherent." The case of Thompson v. Pettibone, 79 Ky. 319, relied upon by appellants, has no application here, because it involved an exchange of one form of personal property for another, and was really justified under the statutes authorizing the guardian to compound the claim of his ward with the permission of a court of equity. It follows that, unless the power of the Harrison chancery court to exchange the beneficial interest of the minor heirs in real estate for shares of stock in a corporation can be found in the statutes of the state, the action of the chancellor and the whole proceeding are void. It is not a question of irregularity, but, the power given being statutory and specific, limitations of its exercise must be strictly followed, or the proceeding is a nullity. This conclusion is abundantly sustained by many decisions of the court of appeals. See Carpenter v. Strother's Heirs, 16 B. Mon. 289; Barrett v. Churchill, 18 B. Mon. 387; Woodcock v. Bowman, 4 Metc. (Ky.) 40; Barnett v. Bull, 81 Ky. 127.

There is no authority conferred upon a court of equity by the statutes of Kentucky, under which the beneficial interest of infants in real estate may be exchanged for shares of stock. Section 489 of the Civil Code of Kentucky (Carroll's Code Ky. 1888, p. 235) provides

that infants' real estate may be sold by a court of equity (1) to pay debts of an ancestor; (2) to pay his own debts; (3) in an action by the guardian for the ward's maintenance and education; (5) in an action against the infant by his guardian for the sale of real estate and investment in other property. The proceedings in this case are said to be for reinvestment, and the authority therefor must be found, if at all, in the fifth paragraph of section 489. But, if so, the decree of the court is void for two reasons:

First, because section 493 requires that before a sale shall take place in accordance with article 5, § 489, the guardian shall execute a bond to the infant, with at least two sureties, worth not less than double the value of the estate to be sold; and, unless such bond be given, any order of sale and any conveyance made under such order shall be absolutely void. No bond was given here.

And, second, because section 19, art. 2, c. 48, of the General Statutes of Kentucky, (Bullitt & Feland,) as amended March, 1884, limits the investments which courts of equity may authorize guardians to make of the money of their wards to real estate or stocks or interest-bearing bonds of the United States, state of Kentucky, or some county or town of the commonwealth. Of course, no reinvestment can be made except in these named securities.

Another contention of the appellees, and one which met with favor in the court below, was that these proceedings could be sustained under section 490 of the Kentucky Civil Code. That section (Carroll's Code Ky. p. 236) provides that a vested estate in real property jointly owned by two or more persons may be sold by order of a court of equity in an action brought by either of them, though the plaintiff or defendant be of unsound mind or an infant, (1) if the share of each owner be worth less than $100; (2) if the estate be in possession, and the property cannot be divided without materially impairing its value, or the value of the plaintiff's interest therein. Section 497, p. 240, provides that—

"In the action mentioned in subsection 2 of section 490 the share of an infant or of a person of unsound mind shall not be paid by the purchaser, but shall remain a lien on the land, bearing interest, until the infant come of age, or the person of unsound mind come of sound mind, or until the guardian of the infant or the committee of the person of unsound mind execute bond as is required by section 493."

It is clear that section 490 does not authorize a sale for anything but a money price. It is true, no bond is required, but that is because the infant's interest is, under section 497, to remain a lien on the land until a bond is given. The provision that the share of the infant shall remain a lien on the land, bearing interest, excludes entirely the idea that anything but a sale for money is authorized by section 490. We should reach this conclusion on the words of section 490 alone, for a statutory authority to sell means a sale for money, either cash or on credit, and not a barter or exchange. More than that, section 19, art. 2, c. 48, of the General Statutes of Kentucky, already referred to, limiting the character of investments for infants, would prevent such an exchange.

For the reasons given, the Harrison chancery court proceedings,

as to the Megibben Excelsior Distillery tract, must be held to be void. Even if they were valid, the shares of stock, by the force of the decree, would belong to the minor heirs, and there would be no power in the administrators to contract to sell their shares of stock, and there would be no right of action in the administrators, as complainants, to enforce such a contract.

Nor do we think that the proceedings as to the Sharpe tract may be taken as an application of the personal representatives of T. J. Megibben to a court of equity to require the minor heirs to part with their naked legal title in order to bring about a reduction of the assets to money. The administrators, who alone could bring such a proceeding, were not parties to the petition in the Harrison chancery court. The petition was based on the theory that the heirs of T. J. Megibben had a beneficial interest, as heirs, in the partnership real estate, and that the court, as a chancery court, had power to order a sale of that interest for shares of stock in the company. The answer admits such to be the case, and the decree expressly finds the interest, and confirms the exchange for shares of stock in the new company as a beneficial investment. It is difficult to see how such a proceeding can be made to serve the purpose of an action to compel the transfer of the naked legal title on the ground that there was no beneficial interest, especially when, as an attempt to sell the beneficial interest of infants in real estate, the proceeding is a nullity. With the defects in the title to the two distillery tracts, we cannot force the property upon an unwilling purchaser. The decree of the court below must be reversed, with instructions to dismiss the bill.